UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| DILLON BIG EAGLE,<br> Plaintiff, | )<br>)<br>)<br>) | |
| | ) | COMPLAINT |
| v. | )<br>) | |
| HUGHES COUNTY, SOUTH DAKOTA,<br>PATRICK CALLAHAN, and VARIOUS<br>DEFENDANT DOES, in their official and<br>individual capacities,<br> Defendants. | )<br>)<br>)<br>)<br>)<br>) | |

COMES NOW, the Plaintiff, Dillon Big Eagle, by and through the undersigned counsel, and states and alleges as follows:

PARTIES

1. Dillon Big Eagle, Plaintiff, is a natural person who, during times relevant to this Complaint, was held as a pretrial detainee at the Hughes County jail in Pierre, South Dakota.

2. Defendant Hughes County is a duly incorporated county formed and existing under the laws of the State of South Dakota. As such, it is a governmental entity and local public body as defined by SDCL 24-11-2, which sets forth that "[t]here shall be established and maintained in every county, by authority of the board of county commissioners and at the expense of the county, a jail for the purpose stated in this chapter, except as provided in § 24-11-3."

3. At all times relevant to this action, Defendant Hughes County operated the Hughes County jail. Hughes County is responsible to develop, implement and enforce policies

1

and procedures that are sufficient to provide for reasonably adequate medical care, conditions of confinement, and all necessaries for the comfort and welfare of persons being held in custody at the Hughes County jail.

4.    Defendant Hughes County has a statutory obligation to appropriate sufficient funds to operate its jail facility for the detention of persons under the jurisdiction of the county.

5.    At all times relevant to this action, Defendant Hughes County employed a Sheriff, Darin Johnson ("Sheriff Johnson") and Patrick Callahan ("Sheriff Callahan"). In that capacity they were responsible for the supervision of jail staff, the enforcement of jail policies and were also responsible for the supervision, protection, and control of the prisoners or detainees, providing adequate medical care, conditions of confinement, and all necessaries for their comfort and welfare while held in the Hughes County jail. Unless otherwise specifically stated in this action, Sheriff Callahan is sued in his individual capacity.

6.    At all times relevant to this action, various Defendant Does were the employees of Hughes County and worked at the Hughes County jail and who, while on duty, were responsible for the supervision, protection, and control of the detainees in the Hughes County jail, their conditions of confinement, and for providing adequate care for their serious medical needs and all necessaries for their comfort and welfare. Unless otherwise specifically stated in this action, these individuals are sued in their individual capacity.

## JURISDICTION AND VENUE

7.    The events giving rise to the Plaintiff's cause and claims alleged in this Complaint occurred in Hughes County, South Dakota.

8.    The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action asserts claims arising under the Constitution and Laws of the United States.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

FACTS

10.    On July 9, 2020, Plaintiff was the victim of a violent crime in which he received multiple gunshot wounds to extremities, left chest, and abdomen.

11.    On July 11, 2020, surgeons created an end colostomy by a short segment of ascending colon brought out for ostomy at his lower right abdominal.

12.    On July 29, 2020, following multiple surgeries, Plaintiff was discharged from the hospital with a bullet still in his body[1] and medically prescribed requirements not limited to a feeding pump, ostomy changes, drain tube for pancreatic leak, and medications.

13.    During his hospital stay between July 11 and July 29, 2020, Plaintiff learned about his colostomy, including appearance of stoma, definition of stoma, pouch change, pouch emptying.  Specific pouch change instructions were included in the applicable nursing policy and required a two-piece pouching system, a wafer and pouch, and a skin ring barrier, specifically sized and prescribed.

14.    A colostomy bag will normally be reversed following its creation unless there is a medical reason prohibiting the reversal surgery.  To the best of Plaintiff's knowledge, information, and belief, he was to get his colostomy reversed after six months to a year, or, at the latest, by July of 2021.

15.    The incidence of parastomal hernia in colostomy patients is highly correlated with the time since surgery.  Upon information and belief, timely colostomy reversal when feasible will eliminate the risk of a parastomal hernia.

---

[1] Plaintiff submits that the bullet was a source of pain and suffering and, in addition to the facts detailed below, Hughes County jail denied Plaintiff necessary medical to remove the bullet.

3

16.    Plaintiff's colostomy reversal was not performed until September of 2022.

17.    For times relevant, between approximately December 31, 2020, through September of 2022, the Plaintiff was a pretrial detainee held in the Hughes County jail. There, Plaintiff was denied necessary medical appointments and delayed a colostomy reversal for over a year. As well as denied medically prescribed equipment, treatments, and medications, and denied reasonable assistance and access to medical care, showers, and accommodations.

18.    Hughes County is responsible for the operation of the Hughes County jail, providing adequate health care for the serious medical needs of its detainees and all the necessaries for their health, comfort, and welfare; the hiring, qualifications, supervision and training of its staff; the development and approval of policies and procedures so that the health and welfare of detainees are not put in jeopardy; and administering the jail facility in compliance with federal and state laws and regulations to assure that detainees are provided adequate care and humane conditions of confinement.

19.    At the times relevant to the claims asserted in this Complaint, Sheriff Johnson or Sheriff Callahan had specific responsibilities related to the management of the Hughes County jail and the welfare of detainees, including but not necessarily limited to, determining and enforcing jail policies, supervising jail staff, and providing all necessaries for the care and welfare of the detainees in Hughes County jail custody, ensuring their safety and protection and that they are housed in humane conditions of confinement.

20.    At the times relevant to the claims asserted in this Complaint, various Defendant Does were correctional officers and staff members at the Hughes County jail, who were responsible for addressing Plaintiff's health care, serious medical needs, and conditions of confinement while Plaintiff was a pretrial detainee in Hughes County jail custody.

21. During the time Plaintiff was held as a pretrial detainee at the Hughes County jail, Sheriff Johnson sent Plaintiff's criminal lawyer an email communication stating that he did not consider colostomy reversal to be "urgent or emergent": "I have thus directed my medical staff to postpone the Dr appt in Sioux Falls."

22. Also, during this time, Sheriff Johnson sent a subsequent email communication to Plaintiff's criminal lawyer, advising again that he did not consider Plaintiff's medical condition "emergent" and that "we are going to continue with our current plan" – commenting: "I have to say that Mr. BigEagle bears responsibility for the situation he is currently in. ..."

23. To the best of Plaintiff's knowledge and understanding, Sheriff Callahan continued to deny and delay Plaintiff's medically necessary appointments for colostomy reversal. To the best of Plaintiff's knowledge and understanding, Sheriff Callahan also denied and delayed Plaintiff's medically necessary procedure to correct a hernia that developed as a result of both Sheriffs Johnson and Callahan intentionally denying and delaying Plaintiff's colostomy reversal for more than a year.

24. Defendants resisted the Plaintiff's medically necessary appointments for surgery to reconnect his intestines and reverse the colostomy.

25. As an example, the Plaintiff had an appointment scheduled with his surgeon at the surgical institute in Sioux Falls for purposes of getting the colostomy bag reversed. The appointment was medically necessary to determine when and what other medical appointments would be needed for Plaintiff's intestines to be reconnected, eliminating the need for the colostomy bag. Sheriff Johnson resisted, refused to allow Plaintiff to see his doctors, keeping the Plaintiff in a seriously compromised, decapacitated, and medically fragile state. To the best of

Plaintiff's knowledge and understanding, Sheriff Callahan continued this policy of denying and delaying Plaintiff's colostomy reversal.

26.     The Hughes County jail refused to cooperate in Plaintiff's necessary medical care, intentionally delayed the Plaintiff from receiving necessary medical care, refused transport to necessary medical appointments that were arranged by Plaintiff or others on his behalf, and would not allow Plaintiff to talk to his specialist, Dr. Jesse Guardado, including restrictions on Plaintiff's communications at the Hughes County jail.  Upon information and belief, the Hughes County jail cancelled Plaintiff's medical appointments on multiple occasions.

27.     As a result, the Plaintiff's colostomy reversal surgery did not occur until September 2022.  By that time, Plaintiff's colostomy was significantly prolapsed, widening and weakening his abdominal wall, resulting in a hernia.  Surgery to correct Plaintiff's hernia was also denied and delayed by the Hughes County jail and did not occur until July 2024.

28.     During the time that Plaintiff was being held in the Hughes County jail, the jail failed to meet his serious medical needs and subjected him to unreasonable, unsanitary, and inhumane conditions of confinement.  The Plaintiff exhausted administrative remedies available to him but was continually denied adequate medical care, reasonable assistance, accommodations for serious medical-related needs, and humane conditions of confinement.

29.     Until the colostomy bag was reversed, while in Defendants' custody at the Hughes County jail, it was difficult for Plaintiff to even walk around as he experienced persistent pain, discomfort, difficulty sleeping due to the colostomy, bleeding from his stoma, leaking feces around the colostomy, and infections.  Plaintiff's guts began protruding from his stoma, requiring that he squeeze his own guts into his colostomy bag, causing significant pain.  Plaintiff submits

that his intestines began to stick out of his stoma which grew from the size of a raspberry to a cucumber.

30.    Plaintiff's colostomy bag severely affected his daily functioning and was the source of significant pain, discomfort, hardship, humiliation, and dehumanization.

31.    At one point, Plaintiff was locked down in a holding cell for over two weeks with a marker board outside of the cell door stating his name, medical conditions such as "feeding tube," "ostomy bag," "1/4 portions soft diet," in addition to such things as "outlaw" and "In Law."

32.    The Plaintiff submits that the Hughes County jail Defendants were deliberately indifferent to, and even made jokes out of, Plaintiff's serious medical needs.

33.    The Plaintiff submits that the Hughes County jail failed to provide him properly sized or prescribed colostomy bags. Various Defendant Does were using the wrong colostomy bags that were not the correct prescription. They would "jimmy-rigg" the bags to try to make them fit. The bags would cut into Plaintiff's stoma and soft tissue, causing persistent pain and discomfort, bleeding, leaking feces, and infections.

34.    The Hughes County jail failed to allow Plaintiff reasonable access to medical attention, supplies, and accommodations including, but not limited to, showers. With the altered colostomy bags, fecal matter would leak out all over Plaintiff, and the Hughes County jail would leave the Plaintiff in his cell covered in his own feces for hours and sometimes days at a time. By way of example, the Plaintiff states that he was not allowed a shower for five days at one point because, according to the guards at the Hughes County jail, a nurse needed to be there.

35.    As another example, in August of 2022, Plaintiff was in booking lockdown for purported "medical observation" – Plaintiff submits he was placed in lockdown in retaliation for

making a grievance – and given an old colostomy bag that was not the correct size or prescription, resulting in feces to leak out onto his clothes and bedding, in addition to significant pain. Plaintiff's need for medical attention and assistance was obvious. However, the jail nurse wanted to end her shift, which she did, refusing to allow Plaintiff to change his leaking colostomy bag and leaving him in that condition all night.

36.    When Plaintiff complained that the colostomy bags were altered or were not the correct prescription, a Hughes County jail nurse told him to "shove the colostomy bag up your ass." The jail guard who was present thought this was funny. This incident occurred in August of 2022 and was the subject of one of the Plaintiff's many grievances over the course of his detention at the Hughes County jail.

37.    At times relevant to this Complaint, the Plaintiff was also supposed to be on a feeding pump prescribed for constant feed, as well as a drain tube for his pancreas.

38.    Plaintiff submits that the Hughes County jail cancelled his prescribed feeding pump because it was inconvenient for them to use. Instead, the Hughes County jail staff would inject the Plaintiff with meals at feeding time. These injections resulted in Plaintiff being overfed and his pancreas to bleed, causing him pain, severe discomfort, nausea, and vomiting.

39.    In addition, the Plaintiff was prescribed numerous medications, including for pain, cramps, spams, nausea, and mental health, and was consistently denied his medications by Defendants. For example, as documented in a grievance, Plaintiff had been prescribed nine medications but was only receiving one, causing Plaintiff to suffer psychologically and physically. Plaintiff submits that the Hughes County jail exhibited a pattern and practice of failing to give him his prescribed medications causing the Plaintiff to suffer physical pain, discomfort, nausea, mental distress, and other physical and mental complications.

8

40.    In 2018, another pretrial detainee was also denied his prescribed medications by the Hughes County jail. That individual died because of improper medical care in Hughes County jail custody.

41.    On June 17, 2022, the Plaintiff entered a plea agreement to access medical care that he desperately needed but was being denied. Upon information and belief, the failure to reverse Plaintiff's colostomy in a timely fashion resulted in a hernia, causing the Plaintiff pain and requiring that he undergo additional surgery to correct. To the best of Plaintiff's knowledge and understanding, the surgery to correct Plaintiff's hernia was also denied and delayed by Sheriff Callahan and Various Defendant Does, causing Plaintiff to further suffer prolonged pain, discomfort, hardship, deprivations, and damages compensable under law.

COUNT I – BAD FAITH BREACH OF PLEA AGREEMENT (42 U.S.C.§ 1983)

42.    Plaintiff hereby realleges paragraphs 1 through 41 as though fully set forth herein.

43.    Once an accused agrees to plead guilty to criminal charges in reliance upon a promise made by the state, the accused's due process rights under the Fourteenth Amendment demand fulfillment of the bargain, including good faith conduct on the part of the state that is consistent with the accused's reasonable expectations of the bargain.

44.    Under 42 U.S.C. § 1983, a plaintiff can seek redress for the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws of the United States.

45.    A breach of plea agreement can serve as grounds for an action under Section 1983 because it implicates due process rights protected by the United States Constitution.

46.    On June 17, 2022, the Plaintiff entered a Plea Agreement in various Hughes County criminal files, which is attached hereto as Exhibit A. Pursuant thereto the Hughes County State's Attorney agreed not to oppose a medical furlough.

9

47.    In putting the terms of the plea agreement on the record on June 17, 2022, Plaintiff's criminal lawyer advised the Court that "[the Hughes County State's Attorney] and I have basically come to an *agreement that it is understood Dillon needs surgery. We know that surgery is not going to get done while he is in jail. ...*" (emphasis added).  The Hughes County State's Attorney did not object, confirming the agreed upon understanding.

48.    Plaintiff submits that he had reasonable expectations in entering into the plea agreement that Hughes County would no longer oppose his access to needed medical care.

49.    As shown by the facts outlined above, the denial of medical care for the Plaintiff was a result of deliberated indifference to his serious medical needs.  Hughes County servants, employees, agents, or officials, acting under color of law, knew of and disregarded Plaintiff's medical needs which posed a substantial risk to his health and welfare.  This is further supported by the agreed upon understanding contemplated by the plea agreement including the promise of the Hughes County State's Attorney that the State would not resist needed medical care.

50.    Even when the state is in technical compliance with a plea agreement's express terms, its actions may implicitly undercut the deal.

51.    The state may not merely pay lip service to the plea agreement, affirming a promise to the defendant out of one side of its mouth but trying to subvert it out of the other side.

52.    Hughes County had a duty to provide for Plaintiff's basic needs and welfare while he was detained in the Hughes County jail, including a duty not to deny or delay needed medical attention and not to interfere with Plaintiff's prescribed care and treatment requirements, under the Due Process Clause of the Fourteenth Amendment.

53.    The attached plea agreement in the state circuit court's files in Hughes County and the on the record comments of counsel, in addition to the above described facts, indicate that

the Plaintiff was in dire need of medical care at the time he entered the agreement, suffering complications and deterioration of his physical and mental health as a result of being denied medical care and prescribed treatments while in custody at the Hughes County jail, and the Plaintiff submits that he signed the plea agreement with a reasonable expectation that his access to medical would no longer be denied.

54.     After entering guilty pleas pursuant to the plea agreement which contemplated, in part, that the State would not resist needed medical care, the Hughes County jail continued to disregard Plaintiff's serious medical needs by denying or delaying care and subjecting him to inhumane conditions of confinement, as outlined by the facts detailed above.

55.     Good faith performance or enforcement of a plea agreement requires faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

56.     As outlined by the facts detailed above, Hughes County acted inconsistently with an agreed common purpose and Plaintiff's reasonable expectations under the plea agreement because Sheriff Callahan and various Defendant Does continued to deny or delay Plaintiff's medical care, including a surgery to address a hernia after interfering with needed colostomy care, and continued to subject the Plaintiff to inhumane conditions of confinement.  Sheriff Callahan continued to refuse to arrange for Plaintiff's medical care through the Hughes County jail, refused to provide transport for Plaintiff's necessary medical appointments for his colostomy reversal, and denied Plaintiff proper colostomy care and reasonable accommodations for his serious medical needs while in Hughes County jail custody.

57.     Although the Plaintiff was eventually allowed a furlough for a colostomy reversal surgery in September 2022, the Defendants' previous denials, delays, and the failure to reverse the colostomy in a timely fashion, upon information and belief, resulted in a hernia that required

additional surgery. To the best of Plaintiff's knowledge and understanding, the necessary surgery to address Plaintiff's hernia was also then denied and delayed by Sheriff Callahan.

58.     Based on the above-described facts, Hughes County committed bad faith breaches of the plea agreement, including through a policy, practice, or custom of failing to train or supervise its employees to ensure that detainees with serious medical needs are provided reasonable care, treatment, and conditions of confinement, amounting to a deliberate indifference to their serious medical needs and a disregard for their legal rights, and causing the deprivations of Plaintiff's constitutional rights as alleged herein.

59.     As a result, the Plaintiff has endured significant and prolonged pain, suffering, distress, hardship, incurred expenses, and has sustained damages which are compensable under law.

COUNT II – VIOLATIONS OF CONSTITUTIONAL RIGHTS (42 U.S.C.§ 1983)

60.     Plaintiff hereby realleges paragraphs 1 through 59 as though fully set forth herein.

61.     42 U.S.C.§ 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."

62.     The Fourteenth Amendment protects pretrial detainees from officials' deliberate indifference to serious medical needs, the denial of adequate medical care, and unreasonable, inhumane conditions of confinement.

63.     During Plaintiff's detention at the Hughes County jail, the Defendants had a duty under the Eighth and Fourteenth Amendments of the United States Constitution to protect Plaintiff from wanton infliction of unnecessary pain, suffering, hardship, and a deliberate indifference to his medical needs. Their duty includes the obligation to protect Plaintiff from the

12

intentional denial or delay of access to medical care and the interference with medically prescribed treatments and medications.

64.    Defendants were at all times relevant acting under the color of law and under the color of authority as officers, employees, agents and servants of Hughes County.

65.    Plaintiff had objectively serious medical needs, including ailments that were painful in nature.

66.    As detailed above, Sheriff Johnson, Sheriff Callahan, and various Defendant Does actually knew of, but deliberately disregarded, the Plaintiff's serious medical needs which were diagnosed by a physician, required treatment, and were obvious.

67.    Based on the facts detailed above, the Defendants knew that their conduct was reckless given the risk to the Plaintiff who was in a fragile medical condition while in the custody of the Hughes County jail and who required assistance, medical care, and attention, including prescribed treatments, colostomy care, a feeding pump, drain tube for his pancreas, medications for various conditions, and multiple surgeries.

68.    As detailed above, the Defendants intentionally denied, delayed, and interfered with Plaintiff's care for his serious medical needs, and denied or interfered with treatments and medications that had been prescribed.

69.    Based on the facts outlined above, the Plaintiff submits that the Defendants' conduct and mental state were akin to criminal recklessness.

70.    Further, pretrial detainees are presumed innocent and cannot be punished before they have been convicted of a crime.  Plaintiff was a pretrial detainee.

71.    The Fourteenth Amendment to the United States Constitution protects pretrial detainees from conditions of confinement that are objectively unreasonable.

13

72.    As detailed by the facts outlined above, the conditions of Plaintiff's confinement in the Hughes County jail were objectively unreasonable because he was denied access to medical, prescribed colostomy bags, feeding tube, medications, sanitary conditions, showers, and reasonable accommodations for serious medical-related needs.

73.    Based on the facts outlined above, the conditions of Plaintiff's confinement at the Hughes County jail amounted to unconstitutional punishment because the conditions were intended to be punitive or were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose.

74.    As described by the above detailed facts, the conditions of Plaintiff's confinement while detained at the Hughes County jail caused a significant deprivation of basic human needs and hardship over an extended period and posed an unreasonable risk to health or safety.

75.    Based on the above facts, Sheriff Johnson, Sheriff Callahan, and Various Defendant Does knowingly and deliberately inflicted plain and suffering on the Plaintiff by their failures, denials, and delays in providing medical care, assistance, and accommodations necessary for Plaintiff's health and welfare.

76.    Defendants' conduct as outlined and detailed above was malicious and sadistic because it was aimed at punishing a pretrial detainee, Plaintiff, with a persistent state of pain, suffering, misery, and humiliation.

77.    As shown by the acts and omissions of Sheriff Johnson, Sheriff Callahan, and various Defendant Does, as detailed above, Hughes County maintained a policy, practice, or custom of denying, delaying, and restricting provisions for medical care and treatments to detainees with serious medical needs, such as the Plaintiff, and of subjecting them to pain, suffering, and inhumane conditions of confinement.

78. At all times relevant to this Complaint, it was the policy and custom of Hughes County to fail to train its jail staff about the obligation to provide prescribed medications and treatments, medical attention and care, humane conditions of confinement, and all necessaries for the health and welfare of pretrial detainees in the Hughes County jail, thereby failing to adequately prevent the constitutional violations of Plaintiff's rights by its employees, officers and staff members.

79. At all times relevant to this Complaint, it was the policy and custom of Hughes County to allow the personal schedules of its medical staff to dictate whether detainees with serious medical needs were subject to delay or denial in receiving medical care, attention, and assistance, including prescribed medications, treatments, and necessaries such as sanitary conditions, clean clothes, bedding, and showers, thereby failing to adequately prevent the constitutional violations of Plaintiff's rights by its employees or agents.

80. Defendant Hughes County developed and enforced policies, practices, or customs that exhibited deliberate indifference to, and reckless disregard for, the constitutional rights of Plaintiff while he was in Hughes County jail custody.

81. Hughes County was aware of its obligation to provide Plaintiff with adequate medical care and humane conditions of confinement.

82. The right of pretrial detainees with serious medical needs to have access to adequate medical care and prescribed medication and treatment while in custody was clearly established at all times relevant to the allegations herein. The right of pretrial detainees to be housed in reasonable, humane conditions of confinement was also clearly established at all times relevant to the allegations herein.

15

83. As demonstrated by the facts outlined above, Hughes County employees engaged in a continuing, widespread, persistent pattern of unconstitutional misconduct, for which Hughes County policymaking officials, such as its Sheriffs, were deliberately indifferent to or tacitly authorized after notice of the same, and the Plaintiff was injured by acts pursuant to custom of Hughes County, which was a moving force behind the constitutional violations alleged herein.

84. Upon information and belief, and to the best of Plaintiff's knowledge and understanding, Defendants have demonstrated a pattern and practice of unconstitutional conduct which is so pervasive and widespread so as to have the effect and force of law, as illustrated above. In 2018, as another example, a diabetic man was being detained at the Hughes County jail, he was also denied and delayed medical care that included medications and treatment for his diabetes, and he died as a result.

85. The above-described policies, practices, and customs demonstrate a deliberate indifference on the part of Hughes County to the Plaintiff's constitutional rights and were the cause of the violations to those rights as alleged in this Complaint.

86. The Plaintiff has experienced conscious pain and suffering, injuries, severe hardship and distress, medical expenses, and damages sustained as a direct and proximate result of Defendants' actions, failures, and delays in providing medical care and humane conditions of confinement.

87. Based on the above-described facts, Defendants' conduct was willful, wanton, malicious, and in utter disregard and indifference for Plaintiff's legal rights, warranting the imposition of punitive damages.

88. The Plaintiff is entitled to attorney fees pursuant to 42 U.S.C.§ 1988.

COUNT III – DISABILITY DISCRIMINATION
(TITLE II OF THE AMERICANS WITH DISABILITIES ACT 'ADA')

16

89.    Plaintiff hereby realleges paragraphs 1 through 88 as though fully set forth herein.

90.    Title II of the ADA prohibits discrimination against qualified individuals with disabilities in the provision of public services, programs, or activities.

91.    The services, programs, and activities of the Hughes County jail are covered under the ADA, ensuring that individuals with disabilities are not excluded from services or denied benefits due to their disabilities.

92.    At the times relevant to this Complaint, the Plaintiff suffered from a disability as defined by the ADA.  As detailed above, Plaintiff suffered from physical or mental impairment that substantially limited one or more major life functions.

93.    While a pretrial detainee in the Hughes County jail, the Plaintiff met the essential eligibility requirements to participate in or receive the benefits of the services, programs, and activities of the Hughes County jail.

94.    The Plaintiff was excluded from participation in, denied the benefits of, and was otherwise discriminated against by the Hughes County jail's services, programs, and activities. This includes the outright exclusion, denial of benefits, and the failure to provide reasonable accommodations.

95.    As detailed by the facts outlined above, the Defendants' actions or inactions were discriminatory and included a failure to provide necessary medical care, reasonable conditions of confinement, and the failure to make reasonable accommodations for Plaintiff's disability-related needs, such as access to medical appointments, prescribed colostomy bags, showers, medications, and a feeding tube.  The refusal of Hughes County to provide these accommodations was due to Plaintiff's disability and such refusals resulted in the exclusion from or denial of the benefits of the Hughes County jail's services, programs, or activities.

17

96.    As a result of the Defendants' conduct detailed above, Plaintiff claims damages for injuries, pain, suffering, hardship, expenses, and such other general, special, and consequential damages as allowed by law, punitive damages, attorney fees, and costs.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays as follows:

1. For Judgment in favor of Plaintiff and against the Defendants, jointly and severally, awarding money damages that will adequately compensate the Plaintiff for the Defendants' violations of his constitutional and statutory rights, bad faith breach of the plea agreement, for physical and mental pain and suffering, emotional distress, severe and prolonged hardship, medical expenses, loss of enjoyment of life experience and loss of quality of life, loss of income or ability to earn income, and for such other, general, special, and consequential damages compensable under law.

2. For punitive damages as allowed by law.

3. For attorney's fees and case costs as allowed by law.

4. For interest as allowed by law.

5. For such other and further relief as deemed appropriate under the circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted this 29th day of November 2024.

/s/ Tucker Volesky
Tucker Volesky
Attorney at Law
356 Dakota Ave. S.
Huron, SD 57350
(605) 352-2126
tucker.volesky@tuckervoleskylaw.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dillon Big Eagle

## DEFENDANTS

Hughes County, South Dakota; Patrick Callahan; Does

**(b)** County of Residence of First Listed Plaintiff    Hughes County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Hughes County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Tucker Volesky, 356 Dakota Ave. S., Huron, SD 57350
(605) 352-2126

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. Section 1983

Brief description of cause:
Deliberate indifference to serious medical needs, humane conditions of confinement, disability discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
10,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| November 29, 2024 | /s/ Tucker Volesky |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | | | | |